CONTINENTAL CASUALTY COMPANY *et al.*, Plaintiffs-Appellees, v. COMMONWEALTH EDISON COMPANY, Defendant-Appellant.

First District (5th Division)   No. 1—95—3851

Opinion filed February 7, 1997.

Theodore J. Low, of Altheimer & Gray, and David F. Graham and James B. Speta, both of Sidley & Austin, both of Chicago, for appellant.

William M. McErlean and Howard L. Teplinsky, both of Seidler & McErlean, and Wendy A. Grossman, of Chapman & Cutler, both of Chicago, and Paul F. Ware, Jr., and Thomas M. Hefferon, both of Goodwin, Procter & Hoar, of Boston, Massachusetts, for appellees.

JUSTICE HOURIHANE delivered the opinion of the court:

This case involves the issuance by Commonwealth Edison (Edison) of 340,000 shares of 15% preferred stock and the redemption of that stock by Edison on February 1, 1987. Plaintiffs, certain institutional investors, challenged the redemption on several theories and filed suit in the chancery court seeking rescission (count I), injunctive relief (count II), declaratory relief (count III), damages for breach of contract (count IV) and fiduciary duty (count V), and damages or injunctive relief for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1994)) (count VI).

The trial court granted Edison's motion to dismiss the complaint, pursuant to section 2—615 of the Code of Civil Procedure. 735 ILCS 5/2—615 (West 1994). On appeal, we reversed the dismissal of counts I through V, finding that, at a minimum, an ambiguity existed in the redemption provisions of the parties' agreement, which precluded conclusive determination of their intent solely from the documents. We also affirmed dismissal of count VI, holding that the Consumer Fraud Act did not apply to this transaction. *Continental Assurance*

*Co. v. Commonwealth Edison Co.*, 194 Ill. App. 3d 1085, 551 N.E.2d 1054 (1990).

On remand, Edison moved for summary judgment, which was granted as to plaintiffs' claims for rescission, injunctive relief, and breach of fiduciary duty. Following a bench trial on the two remaining counts for declaratory relief and for breach of contract, the trial court found that Edison had breached the parties' agreement and awarded $5,749,147.52 in damages. This amount includes $2,774,452.52 as an equitable award of prejudgment interest.

On appeal, Edison asserts that the trial court's damages determination is not supported by the evidence and that the trial court lacked the authority to make an equitable award of prejudgment interest.

We affirm in part and reverse in part and remand for further proceedings.

## ANALYSIS

### I

■ We first consider Edison's argument that the trial court's determination of damages is not supported by the evidence. It is well settled that the determination of damages by a trial court sitting without a jury will not be disturbed on review unless it is contrary to the manifest weight of the evidence. *Schatz v. Abbott Laboratories, Inc.*, 51 Ill. 2d 143, 149 (1972); *Moniuszko v. Moniuszko*, 238 Ill. App. 3d 523, 531, 606 N.E.2d 468 (1992); *In re Estate of Chaitlen*, 179 Ill. App. 3d 287, 292, 534 N.E.2d 482 (1989). The law does not require absolute certainty as to the amount of the damages. Rather, there need only be an adequate basis in the record for the court's determination. *Schatz*, 51 Ill. 2d at 147-48; *Moniuszko*, 238 Ill. App. 3d at 531; *Chaitlen*, 179 Ill. App. 3d at 292.

The record reveals that in 1982, in conjunction with the financing and construction of several nuclear power plants, Edison issued 340,000 shares of 15% preferred stock (preference stock) to certain institutional investors, plaintiffs here. The stock was issued pursuant to a purchase agreement and resolution of Edison's board of directors.

Holders of the preference stock were entitled to annual dividends of 15%, which was commensurate with the then prevailing interest rates. The stock was also subject to a five-year noncall provision, as well as certain indemnity rights of the shareholders and redemption rights of Edison. The trial court specifically found that plaintiffs' decision to buy the stock was dependent on the assumption that, for federal income tax purposes, the dividends would be eligible for the "dividend received deduction" (DRD) provided for under section

243(a)(1) of the Internal Revenue Code of 1954. 26 U.S.C. § 243(a)(1) (1994). Under the DRD, 85% of the dividends would be tax free, resulting in an after-tax yield of 13.965%. If, during the five-year noncall period, the holders of the stock lost the favorable tax treatment under the DRD, the shareholders could seek indemnity from Edison and Edison, in turn, had the right to redeem the stock at par. Edison could also redeem the stock at any time after the fifth year for any reason upon payment of a 6.67% premium. Finally, the agreements provided for a "sinking fund" redemption under which Edison was required to redeem 20% of the issuance on each of the sixth through tenth issuance anniversary dates, so that the entire issuance would be redeemed at the end of the tenth year. Edison had the option of doubling the amount of stock redeemed on any of the mandatory redemption anniversaries. All mandatory redemptions, including doubled redemptions, were at par.

In 1986, interest rates dropped significantly and Edison instituted a plan to redeem, cancel, refund or refinance every obligation carrying a high interest rate, including the preference stock. At the same time, the Tax Reform Act of 1986 became law. Among other things, the Act reduced the DRD from 85% to 80%, effective January 1, 1987. See Pub. L. No. 99—514, § 611(a)(1), 101 Stat. 2085, 2249 (codified at 26 U.S.C. § 243 (1994)). Based on this reduction in the DRD, on February 1, 1987, Edison redeemed the preference stock. Significantly, because of the phase-in provisions of the Tax Reform Act and a reduction in the general corporate tax rate effective July 1, 1987, the preference stock would have produced an after-tax yield in 1987 of 13.8%, a reduction of only .165%.

On remand, the trial court found that Edison's redemption rights were limited by the requirement that it make a good-faith determination prior to redemption that the shareholders "suffered a real and detrimental loss in the after-tax yield on the dividends paid on the stock and not just a de minimis loss," which Edison failed to do. Thus, the court found that Edison clearly breached the purchase agreement.

Edison does not appeal this finding. Rather, it challenges the trial court's determination that, absent this breach, Edison would have redeemed the preference stock in August 1987. Edison argues that the evidence establishes that Edison had in place a comprehensive program to redeem high-rate issuances at the least-cost to the company. Edison contends that the least-cost alternative was a "split redemption," under which Edison would have redeemed 60% of the stock in August 1987 at a premium and the remaining 40% in August 1988 at no premium. Edison argues that support for this position is

found in the unrebutted testimony of its treasurer, Dennis O'Brien, and former vice-chairman, Wallace Behnke, Jr.

As assistant treasurer in the mid-1980s, O'Brien testified that he reviewed Edison's high-rate instruments to determine whether such offerings could be redeemed. Decisions regarding redemptions were made by the board on a purely economic basis. O'Brien further opined that had Edison not redeemed the preference stock in February 1987, the company would have redeemed 60% of the stock in August 1987 at a premium and the remaining 40% in February or August 1988 at par, as this would have been the most economical. He also testified that Edison had engaged in this sort of split-redemption strategy during the mid-1980s when redeeming other high-cost instruments. Significantly, O'Brien did not commence work with Edison until August 1, 1987. He was not a member of the board, did not attend board meetings, did not make recommendations directly to the board concerning redemptions, and was not in the senior management loop with respect to receiving strategic memoranda or minutes of board meetings. His opinion as to what Edison would have done was not based on any conversation with senior management who would have participated in the decision-making process.

At retirement in 1989, Behnke was vice-chairman and a member of Edison's board. His duties as vice-chairman included overall responsibility for the development of the company's strategic planning. Various departments reported to Behnke, including accounting, federal tax, purchasing, rates, and finance. Behnke testified that Edison's strategy has been to minimize costs of financing and to call and refund issues wherever it was clear that such a refunding would lower the overall cost of capital and that the preference stock was no different.

■ However, Behnke's own notes from the December 1986 and January 1987 board meetings plainly indicate that only two possible redemption dates were put before the board—February 1987 or August 1987. No evidence was offered that Edison's management ever contemplated a split redemption for this particular call or that the possibility of redemption at a date other than February or August 1987 was ever presented to or considered by Edison's board.

A decision is against the manifest weight of the evidence if the opposite conclusion is clearly evident or where the findings are unreasonable, arbitrary, or not based on evidence. *Bazydlo v. Volant,* 164 Ill. 2d 207, 215 (1995). Based on the record before this court, it cannot be said that the trial court's determination that Edison would have redeemed the stock on the only other date Edison's board actually considered is against the manifest weight of the evidence. Ac-

cordingly, we affirm the trial court's determination of damages based on redemption of 100% of the issuance in August 1987 at a premium of 6.67%. Because Edison does not challenge the court's calculations based on an August 1987 redemption, we need not review those calculations here.

## II

We next consider Edison's claim that the trial court was without authority to make an equitable award of prejudgment interest. Without elaboration, the trial court ruled that prejudgment interest is appropriate and that the prime rate, rather than the statutory rate, would apply. The court cited *In re Estate of Wernick*, 127 Ill. 2d 61 (1989), and *People ex rel. Hartigan v. Illinois Commerce Comm'n*, 148 Ill. 2d 348 (1992), as authority for the award.

Edison argues that there was no equitable cause of action before the court upon which it could exercise its equitable powers, since the claim underlying the declaratory action was, in fact, a breach of contract. Edison further argues that an equitable award of prejudgment interest conflicts with the provisions of the Interest Act (815 ILCS 205/0.01 *et seq.* (West 1994)), which Edison asserts governs interest awards in breach of contract cases.

Plaintiffs counter that the trial court had before it claims that were not solely legal in nature; that a court's equitable powers are not, in any event, confined to cases sounding in equity; that an award of prejudgment interest was an appropriate means of compensating plaintiffs for the loss of use of funds rightfully theirs; that the Interest Act does not preclude an award of equitable prejudgment interest; and that interest could have been awarded under the Interest Act.

■ Generally, prejudgment interest is recoverable only where contracted for or authorized by statute. *Department of Transportation v. New Century Engineering & Development Corp.*, 97 Ill. 2d 343, 352 (1983); *Ouwenga v. Nu-Way Ag, Inc.*, 239 Ill. App. 3d 518, 526-27, 604 N.E.2d 1085 (1992); *Richman v. Chicago Bears Football Club, Inc.*, 127 Ill. App. 3d 75, 78, 468 N.E.2d 487 (1984); *Cushman & Wakefield of Illinois, Inc. v. Northbrook 500 Ltd. Partnership*, 112 Ill. App. 3d 951, 963, 445 N.E.2d 1313 (1983). However, "[i]n a proper case, equitable considerations permit a court of equity to allow or disallow interest as the equities of the case may demand." *Groome v. Freyn Engineering Co.*, 374 Ill. 113, 131 (1940). Our supreme court recently explained the basis for an equitable award of prejudgment interest:

> "The goal of proceedings sounding in equity is to make the injured party whole. The current trend being employed to ac-

complish this goal is to allow an award of interest on funds owing so that justice might be accomplished in each particular case. [Citations.] In Illinois, prejudgment interest may be recovered when warranted by equitable considerations, and disallowed if such an award would not comport with justice and equity. ***

The rationale underlying an equitable award of prejudgment interest in a case involving a breach of fiduciary duty is to make the injured party complete by forcing the fiduciary to account for profits and interest he gained by the use of the injured party's money. [Citations.] The injured party is thus compensated for any economic loss occasioned by the inability to use his money. Prejudgment interest in this context acts as a concept of fairness and equity and not as a sanction against the defendant. [Citation.] Fundamental principles of damages and compensation dictate that when money has been wrongfully withheld the victim receive interest for the wrongdoer's retention of his money." *In re Estate of Wernick*, 127 Ill. 2d 61, 86-87 (1989).

Plaintiffs argue that the same rationale set forth in *Wernick* should apply here. We disagree. We first observe that although the instant case proceeded before a court of equity, the matter was nonetheless an action at law. At the time of trial, plaintiffs' equitable claims had all been rejected, and the only claims remaining were for declaratory judgment and breach of contract. Actions under the declaratory judgments statute (735 ILCS 5/2—701 (West 1994)) are neither legal nor equitable in nature. Rather, they are *sui generis* and the judgment, decree or order takes its character from the nature of the relief declared. *Albright v. Phelan*, 2 Ill. App. 3d 142, 146, 276 N.E.2d 1 (1971). Here, plaintiffs sought a declaration relative to their rights under the purchase agreement and the court declared that "the exercise by defendant Commonwealth Edison Company of the special redemption right contained in the $15.00 Preference Stock was a breach of the Purchase Agreement." Thus, plaintiffs' inclusion of a declaratory judgment count does not transform what is essentially a legal claim into an equitable one. See *Crerar Clinch Coal Co. v. Board of Education*, 13 Ill. App. 2d 208, 218, 141 N.E.2d 393 (1957) (court rejected argument in declaratory judgment action that because prayer for relief asked not only for declaration of rights under contract, but also for an accounting and payment of moneys, plaintiff's action required the application of equitable principles, particularly the doctrine of unjust enrichment).

While it is true, as plaintiffs assert, that every circuit court judge has equitable powers (*Chrysler Credit Corp. v. M.C.R. Leasing Co.*, 114 Ill. App. 2d 43, 49, 251 N.E.2d 648 (1969)) and that equitable relief is available even where a case is pending in the law division

(see *Kaplan v. Keith*, 60 Ill. App. 3d 804, 809, 377 N.E.2d 279 (1978)), these observations merely underscore the principle that the character or nature of the court and the relief available to a plaintiff are derived from the substance of the claim before it. In other words, the availability of equitable relief is not necessarily precluded merely because a case is proceeding in the law division, nor is equitable relief automatically awarded merely because a case is proceeding in the chancery division. Rather, and as already stated, it is the substance of the claim that determines the appropriate relief and the nature of the court. Here, the "substance" of the claim is a breach of contract, a classic action at law. *Eyman v. McDonough District Hospital*, 245 Ill. App. 3d 394, 397, 613 N.E.2d 819 (1993). Thus, the court was not sitting in equity.

Significantly, Illinois courts have declined to apply the rule governing equitable awards of prejudgment interest to cases at law, notwithstanding that an injured party who is eventually compensated may suffer detriment from the inability to use the money from the date of loss to the date of compensation. See *Wilson v. Cherry*, 244 Ill. App. 3d 632, 636-40, 612 N.E.2d 953 (1993) (and cases cited therein). See also *Kerasotes v. Estate of Kerasotes*, 238 Ill. App. 3d 1020, 1030-32, 605 N.E.2d 643 (1992) (court was "sitting in equity" and could award prejudgment interest where former partner's action for equitable accounting and existence of fiduciary relationship among the parties provided a sufficient basis to invoke the equitable jurisdiction of the court).

Plaintiffs maintain nonetheless that *Wernick* need not be read so narrowly and that, under *Steward v. Yoder*, 86 Ill. App. 3d 223, 408 N.E.2d 55 (1980), *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 128 Ill. App. 3d 678, 470 N.E.2d 1293 (1984), *Cummings v. Beaton & Associates, Inc.*, 249 Ill. App. 3d 287, 618 N.E.2d 292 (1992), *People ex rel. Hartigan v. Illinois Commerce Comm'n*, 148 Ill. 2d 348 (1992), and other decisions, the trial court properly exercised its discretion. However, none of the cases cited by plaintiffs opens the door for an equitable award of prejudgment interest in an action for breach of contract.

In *Steward*, a breach of contract case, this court reversed an equitable award of interest and applied the rule that "[p]rejudgment interest is allowable only where it is so agreed by the parties or where permitted by statute." *Steward*, 86 Ill. App. 3d at 225. We also observed that the element of bad conduct necessary for either a statutory or equitable award of interest was not present.

*Kozak* involved an appeal by the Retirement Board of the Firemen's Annuity and Benefit Fund of Chicago from an order of the

circuit court requiring the board to pay prejudgment interest on certain judgments for retroactive widows' annuity payments. We affirmed an equitable award of interest, noting that such awards are discretionary "in an equitable proceeding" and that the board deliberately concealed a change in statutory construction from plaintiff. *Kozak*, 128 Ill. App. 3d at 682. In *Finley v. Finley*, 81 Ill. 2d 317, 331 (1980), on which the *Kozak* decision is based, our supreme court held that, because a divorce proceeding was in the nature of a chancery proceeding, it would be governed by the rules applicable thereto, and an equitable award of interest was appropriately assessed on past-due periodic support payments. Thus, *Kozak* cannot be construed as authority for equitable awards of prejudgment interest in cases that are not in the nature of an equitable proceeding.

In *Cummings*, we affirmed an award of prejudgment interest, under the interest statute, for breach of a settlement agreement and rejected plaintiffs' claim that the prime rate, rather than the statutory rate, should apply. Although we stated that, under *Wernick*, there was "some merit" to plaintiffs' plea for the higher interest rate, we ultimately distinguished the two cases. Unlike *Wernick*, the defendant in *Cummings* did not stand in a fiduciary relationship to the plaintiff and the statutory interest award was not based on the vexatious delay provisions of the interest statute.

Finally, in *Hartigan v. Illinois Commerce Comm'n*, our supreme court affirmed an equitable award of prejudgment interest at prime on amounts the utility collected pursuant to illegal rates. Our supreme court agreed with the circuit court that Edison should not be allowed to "amass approximately three hundred million dollars of illegal rates over three years and then repay it back at less than passbook rates." *Hartigan*, 148 Ill. 2d at 406. In examining the refund order and the award of interest, our supreme court focused on the court's equitable powers to fashion an appropriate remedy when none is provided under the Public Utilities Act (*Hartigan*, 148 Ill. 2d at 393-98) and equity's goal of making the utility customers whole following collection of illegal rates (*Hartigan*, 148 Ill. 2d at 405-07). Plainly, the trial court here was not faced with the same considerations.

At most, *Steward*, *Kozak*, *Cummings*, and *Hartigan* suggest that some element of bad conduct must be present before an equitable award of prejudgment interest will be made, although *Wernick* makes it clear that equitable awards of interest are not sanctions. However, these cases cannot reasonably be construed as authority for an equitable award of prejudgment interest in a case for breach of contract. We note that the *Wernick* opinion is framed in terms of the goal of

"proceedings sounding in equity" and we decline to extend the court's rationale to cases sounding in law. Thus, in the case *sub judice*, the trial court was without authority to enter an equitable award of prejudgment interest. Accordingly, we need not consider whether the award constituted an abuse of discretion. See *Wernick*, 127 Ill. 2d at 87 (whether equitable circumstances exist which support an equitable award of interest is a matter within the sound discretion of the trial court and will not be reversed on review absent an abuse of discretion).

We believe our decision also comports with the Interest Act (Act) which, *inter alia*, sets forth a limited number of circumstances in which, absent an agreement between the parties, interest will be allowed on moneys after they become due. 815 ILCS 205/0.01 *et seq.* (West 1994). Section 2 of the Act specifically provides for allowance of interest at the rate of 5% per annum "for all moneys after they become due on any *** instrument of writing." 815 ILCS 205/2 (West 1994). A contract is an "instrument of writing" under the Act (*Michigan Avenue National Bank v. Evans, Inc.*, 176 Ill. App. 3d 1047, 1061, 531 N.E.2d 872 (1988)) and the parties concede that the Act applies to this breach of contract action. However, interest will only be awarded under the Act where the amount due is fixed or easily computed. *Couch v. State Farm Insurance Co.*, 279 Ill. App. 3d 1050, 1054, 666 N.E.2d 24 (1996); *Bank of Chicago v. Park National Bank*, 266 Ill. App. 3d 890, 900, 640 N.E.2d 1288 (1994). It would be a truly anomalous result if, having satisfied the requirements under the Act, a plaintiff suing on a written contract was awarded prejudgment interest at 5%, whereas a plaintiff who could not satisfy the statutory requirements could nonetheless seek and receive an award of prejudgment interest and at a rate in excess of the statutory amount. Similarly, the Act would be rendered meaningless if a breach-of-contract plaintiff could choose between statutory interest and equitable interest. For these further reasons, we believe that the trial court here was without authority to make an equitable award of prejudgment interest.

We are mindful that, historically, prejudgment interest was not allowable at common law, and we are reluctant to expand the concept beyond the narrow provisions of the Interest Act and what one court has termed the " 'equitable' safety valve" carved out by Illinois courts. See *Needham v. White Laboratories, Inc.*, 847 F.2d 355, 361 (7th Cir. 1988).

Plaintiffs contend that an award of prejudgment interest need not be limited by the provisions of the Interest Act and that *Wernick* permits the courts to apply the prime rate rather than the statutory

rate. See *Cummings*, 249 Ill. App. 3d at 319 ("*Wernick* does open the way for courts to apply the prime rate as a means of better compensating injured parties"). *Wernick* only provides that, where an equitable award of prejudgment interest is otherwise appropriate, the court need not look to the prejudgment interest statute to establish a sufficient rate. *Wernick* does not provide authority to disregard the express provisions of the Act. Thus, prejudgment interest on moneys due on an instrument of writing is capped at 5%. To the extent *Cummings* can be read to provide otherwise, we decline to follow it. See *First Federal Savings & Loan Ass'n v. Walker*, 91 Ill. 2d 218, 227 (1982) (a court of equity has no power to dispense with the plain requirements of a statute); *601 West 81st Street Corp. v. City of Chicago*, 129 Ill. App. 3d 410, 418, 472 N.E.2d 827 (1984) ("[t]he equitable powers of a court may not be exercised to direct a remedy in contradiction to the plain requirements of a statute").

As to the applicability of the Act to the circumstances present here, there is nothing in the record to suggest that the trial court considered this matter. Clearly, the court was not foreclosed from making an award of prejudgment interest under the Act, provided the statutory requirements are met. We therefore remand the matter to the trial court for further proceedings to determine whether a statutory award of prejudgment interest is appropriate.

For the reasons set forth above, we affirm the trial court's damages determination based on an August 1987 redemption, reverse the award of prejudgment interest, and remand the matter for further proceedings consistent with this ruling.

Affirmed in part and reversed in part; cause remanded.

McNULTY, P.J., and GORDON, J., concur.