# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 02-1733, 02-1810 and 02-3477

HARRY L. MAYNARD, DENNIS R. FAVARO, PATRICIA L. JOCHUM
and FAVARO, BUZEK & GORMAN, LTD.

*Plaintiffs-Appellants/Cross-Appellees,*
*v.*

KEITH NYGREN, **in his official capacity as**
**Sheriff of McHenry County, Illinois,**

*Defendant-Appellee/Cross-Appellant.*

———————

**Appeal from the United States District Court**
**for the Northern District of Illinois, Western Division.**
**No. 98 CV 50193—Philip G. Reinhard**, *Judge.*

———————

ARGUED JANUARY 23, 2003—DECIDED JUNE 10, 2003

———————

Before BAUER, CUDAHY and COFFEY, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Corrections officer Harry Maynard sued his former employer, the McHenry County Sheriff, alleging a violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-213. On February 14, 2002, the district court, finding discovery violations, Fed. R. Civ. P. 37(c), granted the defendant Sheriff's motion to dismiss and assessed monetary sanctions against Maynard and his counsel, attorneys Dennis Favaro and Patricia

Jochum and the firm of Favaro, Buzek & Groman, Ltd. Maynard and his counsel appeal on the ground that the trial court failed make a finding of a discovery violation sufficient to sustain the sanction of dismissal. The appellants also claim that part of the monetary sanctions were improper and that there was insufficient cause to sanction counsel. The appellants ask us to vacate the district court order and remand to a different district judge under 28 U.S.C. § 455(a). The Sheriff cross-appeals, requesting additional attorney's fees from the appellants. We affirm in part and reverse in part and remand for reconsideration.

I.

Harry Maynard began working as a corrections officer at the McHenry County Sheriff's Department in 1992. In February 1996, Maynard was hospitalized and diagnosed with multiple sclerosis. Following his hospital stay, he presented his supervisor, Chief Maire, with a report (dated March 4) from his doctor, David Martinez, allowing him to return to work. However, Maynard was told by Maire that he would not be allowed to return to work because the report stated that he could have recurrent episodes of weakness and unsteadiness. Maynard met with Dr. Martinez to discuss Maynard's displeasure with the content of the March 4th report, and they arranged for Maynard to meet with a neurologist. On March 25, Benjamin Nager, a neurologist, wrote to Dr. Martinez confirming that Maynard should not be released back to work without restrictions. Based on this letter, Dr. Martinez wrote a second report on April 4, stating that Maynard was not then able to perform the functions of his job, but that he might become able within ninety days. Where this April 4th report ended up, and did not end up, lies at the root of Maynard's troubles; what is known is that the Sheriff was not given a copy of this report until this lawsuit was well underway.

The Sheriff's lawyer wrote Maynard in November 1996 to advise him that, as an alternative to releasing his medical records (something he was not legally obligated to do), Maynard could submit himself to an examination by an Independent Medical Examiner in order to determine his ability to return to work. In January 1997, Maynard met with Dr. Pradip Sethi, who confirmed that there was no guarantee that Maynard would be symptom-free or that he could perform all his job functions at all times. Based on Dr. Sethi's reports, the Sheriff terminated Maynard. This lawsuit alleging refusal to provide a reasonable accommodation under the ADA followed.

The Complaint and the Amended Complaint in this action failed to mention the existence of the second, April 4th, report of Dr. Martinez. Nor did the April 4th report appear during discovery, although Maynard's counsel forwarded to the Sheriff what was supposed to be all of Maynard's medical records from Dr. Martinez's file. The Sheriff finally learned of the April 4th report and received a copy of it from Dr. Martinez in January 2002, shortly before the trial date. The Sheriff then filed an emergency motion seeking involuntary dismissal and sanctions under Fed. R. Civ. P. 37(c)(1) for Maynard's failure to disclose the document. The trial judge held an evidentiary hearing to explore exactly what had happened to the April 4th report.

At the hearing, Dr. Martinez testified that he had prepared the April 4th report at Maynard's urgent request. Jeanne Gannon, Dr. Martinez's assistant, testified that she had typed the report and left it hanging in a public area of the office to be picked up. While she did not witness Maynard picking up the report, she concluded that the report had been picked up since the original was not returned to Maynard's medical file. On the other hand, there was no note in Maynard's chart showing that he had requested such a report (as there ordinarily would be), and Maynard denied that he had requested or received the report.

Cynthia Kroncke, Dr. Martinez's former medical assistant, also testified. She said that she had copied the entire Maynard file and had sent copies to Maynard's counsel in February 1999. In view of Dr. Martinez's testimony that a copy of the April 4th report was in the file in 2002, it appeared that Maynard's counsel had received the April 4th report during discovery, but somehow had failed to forward it to the Sheriff's counsel.

Judge Reinhard found that Maynard's denials were not credible, and that he had intentionally withheld the April 4th report. Judge Reinhard also noted that Maynard had lied in his Amended Complaint and in an affidavit by stating that Dr. Martinez would not change the original, March 4th report. Am. Compl. at 4, para. 18 ("Maynard tried unsuccessfully to obtain a different release, but the physician would not change the wording from the original release."); Maynard Aff., Pl.'s Resp. to Def.'s Emergency Mot. for Involuntary Dismissal Ex. G, at 1 ("I had never seen Dr. Martinez's April 4, 1996 letter until January 25, 2002 when it was provided to me by my counsel."). The judge dismissed Maynard's suit, awarded the Sheriff attorney's fees and costs incurred in bringing the emergency motion and assessed a fine of $3500 payable to the court for the time spent on the motion. Judge Reinhard also found that the April 4th report had been provided to Maynard's counsel, but he did not believe that counsel had deliberately withheld the letter, positing instead that the letter was either lost in the office or removed from the office, possibly by Maynard. Nonetheless, the monetary sanctions were divided evenly between Maynard and his counsel because the judge felt that the situation could have been avoided had counsel been more careful with the discovery documents or more diligent in investigating their client's testimony.[1]

---

[1]  The order, in relevant part, stated:

(continued...)

## II.

Discovery sanctions are reviewed for abuse of discretion. *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 642 (1976); *Johnson v. J.B. Hunt Transp., Inc.*, 280 F.3d 1125, 1130-31 (7th Cir. 2002). Under this standard, we uphold any exercise of the district court's discretion that could be considered reasonable, even if we might have resolved the question differently. *Johnson*, 280 F.3d at 1130-31. However, a district court by definition abuses its discretion when it makes an error of law, *Koon v. United States*, 518 U.S. 81, 100 (1996), and, while factual findings are generally reviewed only for clear error, findings which are tainted by the application of an inapposite standard are subject to fuller review, *see Platinum Tech., Inc. v. Fed. Ins. Co.*, 282 F.3d 927, 931 (7th Cir. 2002) ("In cases of mixed questions of law and fact the standard is oftentimes clear error (or abuse of discretion), though plenary review may be used when certain factors indicate it is warranted or needed."); *cf. Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 307 (7th Cir. 2002) (noting that clear error generally governs when the question is whether a given rule had been applied properly to accepted facts).

We must first clarify the law of this circuit on the weight of evidence necessary to support dismissal as a discovery sanction. Then, we will consider the appropriateness of the other sanctions ordered by the district judge.

---

(...continued)

The court enters the following sanctions against plaintiff/his counsel: (1) This case is dismissed with prejudice for discovery violation; (2) Defendant is awarded reasonable attorney fees, expenses, and costs incurred in bringing this emergency motion (½ to be paid by the plaintiff and ½ to be paid by plaintiff's counsel); and (3) an additional sanction of $3,500 to be paid to the Clerk of Court for the court's time incurred on this emergency motion (½ to be paid by plaintiff and ½ to be paid by plaintiff's counsel).

### A.

Of all possible sanctions, dismissal is considered "draconian," and we must be "vigilant" in our review. *Marracco v. Gen. Motors Corp.*, 966 F.2d 220, 223-24 (7th Cir. 1992). Because of its severity, we have circumscribed the range of cases in which dismissal may be used as a sanction. Looking at the case law, we find two different standards for determining whether a case can properly be dismissed. Some of our cases have held that actions can be dismissed "when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998); *Schilling v. Walworth Sheriff Park and Planning Comm'n*, 805 F.2d 272, 278 (7th Cir. 1986). This appears to be the standard used when cases are dismissed for want of prosecution or failure to comply with orders of the court, Fed. R. Civ. P. 41(b). A slightly different requirement—a finding of willfulness, bad faith or fault—comes into play when dismissals are used specifically as a discovery sanction under Fed. R. Civ. P. 37.[2] *In re Golant*, 239 F.3d 931, 936 (7th Cir. 2001); *Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997); *cf. In re Rimsat, Ltd.*, 212 F.3d 1039, 1046-47 (7th Cir. 2000) (requiring a finding of bad faith when a district court dismisses a case under the inherent powers of the court). That is, even without "a clear record of delay, contumacious conduct or prior failed sanc-

---

[2] In *Ladien v. Astrachan*, 128 F.3d 1051, 1056 n.5 (7th Cir. 1997), we noted that the overlap between Rules 41(b) and 37(b)—both cover failures to comply with orders of the court—and the slightly different requirements for justifying dismissal under each rule pose a conflict. While this question is not before us today—we have a Rule 37(c) violation only—we assume that Rule 37(b), as the more specific provision, would apply when discovery orders are at issue. *But see Lucien v. Breweur*, 9 F.3d 26, 29 (7th Cir. 1993) ("The criteria for sanctions under Rules 16(f), 37(b), and 41(b) are the same.").

tions," a court can apply the sanction of dismissal for Rule 37 violations with a finding of willfulness, bad faith or fault, as long as it first considers and explains why lesser sanctions would be inappropriate. *See Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000); *Schilling*, 805 F.2d at 278 ("When a clear record of delay, contumacious conduct, or prior failed sanctions does not exist, the exercise of judicial discretion requires that the district court consider and explain the inappropriateness of lesser sanctions."); *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1478-79 (D.C. Cir. 1995) (requiring that courts provide a "specific, reasoned explanation for rejecting lesser sanctions" and collecting cases requiring same).

We have not yet answered the question of what burden of proof is necessary to sustain a Rule 37 dismissal based on willfulness, bad faith or fault. For Rule 41(b) dismissals, the record of delay, contumacious conduct or prior failed sanctions must be "clear." *Williams*, 155 F.3d at 857. Is there a similar requirement for the evidence supporting a finding of willfulness, bad faith or fault? The Sheriff argues that a preponderance of the evidence suffices, while Maynard argues that there must be clear and convincing evidence before a case is dismissed for a discovery violation. *See Danis v. USN Communications, Inc.*, No. 98 C 7482, 2000 U.S. Dist. LEXIS 16900, at *103 (N.D. Ill. Oct. 23, 2000) (following *Shepherd*, 62 F.3d at 1472, 1477, and applying a clear and convincing evidence standard). We agree with the appellants that, considering the severe and punitive nature of dismissal as a discovery sanction, a court must have clear and convincing evidence of willfulness, bad faith or fault before dismissing a case.[3] *See Shepherd*, 62 F.3d at 1476-77

---

[3] This holding brings the evidentiary standard applicable here into line with the standard applicable to justify dismissal for delay, contumacious conduct or failed sanctions. In all circum-
(continued...)

(comparing dismissal as a discovery sanction to civil fraud and civil contempt); *cf. Aoud v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (holding that fraud on the court must be demonstrated "clearly and convincingly"); *Pfizer, Inc. v. Int'l Rectifier Corp.*, 538 F.2d 180, 195 (8th Cir. 1976) (a finding of fraud on the court "must be supported by clear, unequivocal and convincing evidence"); *Scholastic, Inc. v. Stouffer*, 221 F. Supp. 2d 425, 439 (S.D.N.Y. 2000) (applying the clear and convincing evidence standard to dismissal for a fraud on the court).

Working without the benefit of a clear pronouncement from this court on the appropriate burden of proof, the district judge did not specify which standard he was applying. *Cf. Danis*, 2000 U.S. Dist. LEXIS 16900, at *103 (applying the clear and convincing evidence standard in the absence of contrary guidance). We are left to deduce from the record which standard was applied. We agree with the appellants that the district court may have applied a preponderance standard. This belief is grounded principally on the portions of the ruling which deal with Maynard's counsel's culpability. On two occasions, the district judge noted that it was "more likely" than not that the April 4th report was sent to counsel. Tr. of Proceedings (Tr.) at 148-49 (Feb. 14, 2002). We also note the circumstantial nature of much of the evidence, which makes this perhaps a closer case than some. While we cannot conclude with certainty that a preponderance, rather than a clear and convincing, standard was applied, the absence of any assurance that the higher burden of proof was considered advises us to assume for the purpose of this appeal that the lower threshold was used.

The Sheriff argues now that, regardless of the standard used below, the evidence is in fact clear and convincing, and

(...continued)
stances, to justify dismissal as a sanction, there must be clear and convincing evidence.

that we should affirm the dismissal. And the evidence does appear to support the Sheriff's positions and the district court's conclusions quite strongly. The court reasonably relied on the persuasive testimony of Dr. Martinez and his staff in finding that Maynard had acted in bad faith in concealing evidence during pleadings and discovery. However, especially because factual determinations such as these are the special province of the trial judge, we must defer to the trial judge and allow him to reconsider the evidence in light of the standard announced here.[4] In remanding the case, we do not find appropriate the recusal of Judge Reinhard, and are confident that he will approach this determination without preconception. Nothing in the record persuades us otherwise. *See Grove Fresh Distribs., Inc. v. John Labott, Ltd.*, 299 F.3d 635, 640 (7th Cir. 2002) (holding that bias must be proven by compelling evidence of "deep-seated favoritism or antagonism as would make fair

---

[4] As appellants' counsel acknowledged at oral argument, a further hearing is probably unnecessary. However, two points may be worth noting. As noted above, in cases not involving a clear record of delay, contumacious conduct or failed prior sanctions, district courts must explain why sanctions lesser than dismissal would not suffice. The appellants complain that the district court did not satisfy this requirement adequately. While we recognize that the district court did consider some lesser sanctions, *see* Tr. at 146, it would be helpful if the judge discussed in greater detail specific potential sanctions and their inadequacy. In particular, Rule 37(b)(2)(A) and (B) provide sanctions that the district court may consider. The appellants also express concern that the district judge's order was based on an erroneous finding of the importance of the April 4th report. If indeed the legal significance of the April 4th report is a principal basis for dismissing this case, rather than imposing a lesser sanction, it may be worthwhile for the district judge to elaborate on any effect earlier disclosure of the document might have had on pretrial rulings. *See* Tr. at 142 ("[The report] could have impacted on my decision to. . . grant summary judgment.").

judgment impossible" (citing *Liteky v. United States*, 510 U.S. 540 (1994))).

### B.

Even if the district court upon reconsideration declines to dismiss this lawsuit—and we make no recommendation on the matter—there remain the other, non-dismissal sanctions, which are generally permissible even without clear and convincing evidence. The monetary sanctions imposed by the district judge included both attorney's fees to the Sheriff and a $3500 fine for the court's time. Half of these amounts was to be paid by Maynard and half by Maynard's counsel. The appellants argue that the $3500 fine was an abuse of discretion, as was any sanction against counsel.

As to the $3500 fine, the appellants provide no case law that supports their argument. On the contrary, there is ample case law validating the use of fines, especially where they are "remedial" and correspond to some real cost (here, the court's time at $500 per hour). *Classic Amenities, Inc. v. Verbeke*, No. 00 C 3326, 2001 U.S. Dist. LEXIS 7465, at *5-6 (N.D. Ill. June 4, 2001) (assessing a $5000 fine for a Rule 37 violation and collecting cases assessing court fines); *cf. United States v. Dowell*, 257 F.3d 694, 699-700 (7th Cir. 2001) (approving a fine of approximately $2500, imposed in a civil contempt order, based on the cost to the government of a lawyer's failure to appear at trial). While fines are not specifically included in the non-exclusive list of sanctions in Rule 37(b)(2), they are among the tools available to trial courts to remedy the harms of discovery violations. Such a fine was within the discretion of the district judge.

The second question demands more analysis. We see two potential bases for upholding the district court's sanction against Maynard's counsel: the Federal Rules of Civil Procedure and the inherent powers of the court. Reading

the transcript of the proceedings below, it is not clear on which the district court was basing the sanctions; thus, we consider whether the sanctions against Maynard's counsel would have been permissible under either authority.

We agree with the appellants that *Insurance Benefit Administrators v. Martin*, 871 F.2d 1354, 1360 (7th Cir. 1989) (*IBA*), does not permit the imposition of Rule 37(c) sanctions on attorneys. *See also Apex Oil Co. v. Belcher Co. of N.Y.*, 855 F.2d 1009, 1014 (2d Cir. 1988) (refusing to extend Rule 37(c) sanctions to counsel); Fed. R. Civ. P. 37(c) advisory committee's note to 1970 amendment (Rule 37(c) requires "that *the party* improperly refusing the admission pay the expenses of the other side in making the necessary proof at trial.") (emphasis added); *cf. Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-65 (1980) (noting that Rule 37(*b*) explicitly allows sanctions against attorneys); Fed. R. Civ. P. 37(b)(2) ("[T]he court shall require the party failing to obey the order *or the attorney advising that party* or both to pay the reasonable expenses.") (emphasis added). In *IBA*, we held that attorneys can be sanctioned for failure-to-disclose violations only under Rule 26(g)(3), which authorizes sanctions against attorneys who certify discovery disclosures in violation of the rules. In the case at hand, because the court found that counsel had no knowledge that the discovery response was inadequate, there is no ground for a sanction under Rule 26(g), which applies only to knowing violations of the rules. Any sanction against Maynard's counsel based on Rule 37(c) or 26(g) was improper.

The district judge's finding of no willfulness also precludes any sanction against counsel under the inherent powers of the court. While generally the inherent powers of the court can extend beyond those powers granted in the Federal Rules of Civil Procedure, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (specifying that the inherent powers are not limited by the Federal Rules of Civil Procedure), the assessment of fees against counsel under the inherent pow-

ers of the court is permitted only when there is a finding of willful disobedience or bad faith, *Roadway Express*, 447 U.S. at 755-56. *See also United States v. Johnson*, 327 F.3d 554 (7th Cir. 2003) (disallowing a punitive sanction under the inherent powers of the court where there was no bad faith). Here, however, the district judge found explicitly that counsel did *not* willfully withhold the document—the judge blamed the document's disappearance on negligent mishandling. There is no authority under the Rules or under the inherent powers of the court to sanction attorneys for mere negligence, and so sanctions must be reversed as applied to Maynard's counsel.

### III.

The Sheriff cross-appeals, arguing that he should have been awarded all his attorney's fees, and not merely those incurred in bringing the successful motion for dismissal. The Sheriff argues that such full reimbursement is required by the text of Rule 37. However, Rule 37 supports only the reimbursement of fees resulting from the discovery violation. Fed. R. Civ. P. 37(c)(1) (allowing courts to require "payment of reasonable expenses, including attorney's fees, *caused by the failure*") (emphasis added). As long as the suit as a whole was not frivolous, and we have no reason to believe that it was, the remaining attorney's fees would have been incurred even without the discovery violation; thus, the causality requirement was not met. The Sheriff also argues that attorney's fees are required under Rule 41, under which a dismissal not otherwise grounded "operates as an adjudication on the merits." However, the American Rule is generally that prevailing parties are *not* entitled to fees, even where a full adjudication on the merits has taken place. The Sheriff's claim under the ADA, 42 U.S.C. § 12205, also fails since there was no finding that Maynard's claim was frivolous, unreasonable or without

foundation. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978). None of the bases for cross-appeal are therefore valid.

## IV.

For the foregoing reasons, the judgment of the district court is REVERSED in part and AFFIRMED in part.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*