In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-2599

CONSUMER PRODUCTS
RESEARCH & DESIGN, INC.,

*Plaintiff-Appellee*,

*v.*

JIMMY JENSEN, RYAN JENSEN
AND INNOTEK CORP.,

*Defendants-Appellants*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 06 C 625—**John C. Shabaz,** *Judge*.

ARGUED SEPTEMBER 16, 2008—DECIDED JULY 16, 2009

Before CUDAHY, FLAUM and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. Consumer Products Research &
Design, Inc. ("CPRD") holds a patent for a smoke detector
system that uses wireless technology. Robert Kirshner
is the president of CPRD and is the inventor of the pat-
ented system. Jimmy Jensen ("JJ") represented himself
to be the president of an entity called Tanj Company. His
son, Ryan Jensen ("RJ"), is the president of Innotek Corpo-
ration. In July 2004, CPRD entered into a licensing agree-

ment with Tanj and Innotek. Tanj was to develop and market the invention, and Innotek Corp was to act as a sub-licensee that was responsible for manufacturing and selling the patented technology. JJ executed the licensing agreement on behalf of Tanj and RJ signed on behalf of Innotek. Ultimately the relationship fell apart and CPRD filed this suit, alleging fraudulent inducement and breach of contract. A bifurcated trial in June 2007 resulted in a verdict against the Jensens and Innotek in the amount of $623,900 in compensatory damages. The jury also awarded the plaintiff $100,000 in punitive damages against JJ. The Jensens and Innotek now appeal, and we affirm.

The defendants essentially raise two arguments in this appeal: that the evidence was insufficient to support the jury's verdict, and that the district court improperly failed to give a requested jury instruction. Because the majority of the defendants' claims fail on procedural grounds, most of the underlying facts of the case are irrelevant to the appeal. CPRD's central allegation is that the Jensens and Innotek made material, fraudulent misrepresentations as to the existence or capabilities of Tanj, the designated licensee under the contract, and then failed to pay any of the money due under the licensing agreement.

We turn first to the issue of insufficiency of the evidence. At the conclusion of CPRD's evidence in the liability phase of the trial, the Jensens and Innotek moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), arguing that the evidence was insufficient for a reasonable jury to find in CPRD's favor.

The court reserved ruling on the motion until the close of all evidence in the liability trial and then denied it. After the jury returned its verdict, neither the Jensens nor Innotek filed postverdict motions under Rule 50(b) or Rule 59.

A party's failure to comply with Rule 50(b) forecloses any challenge to the sufficiency of the evidence on appeal. *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404-07 (2006). "A postverdict motion is necessary because '[d]etermination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart.'" *Unitherm*, 546 U.S. at 401 (quoting *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 216 (1947)). *See also Unitherm*, 546 U.S. at 407 ("we hold that since respondent failed to renew its postverdict motion as specified in Rule 50(b), there was no basis for review of respondent's sufficiency of the evidence challenge in the Court of Appeals."). Although the defendants here filed a Rule 50(a) motion prior to the jury verdict on liability, their failure to file a postverdict motion under Rule 50(b) forfeits all of their claims regarding insufficiency of the evidence. *See Pearson v. Welborn*, 471 F.3d 732, 738-39 (7th Cir. 2006). We therefore may not consider those claims in this appeal.[1]

---

[1] The defendants belatedly attempted in their reply brief to distinguish *Unitherm* as inapplicable when evidentiary errors

(continued...)

The only remaining issue, then, involves the district court's decision not to give the defendants' re-quested "Party-In-Interest Instruction" to the jury. The defendants asked the district court to instruct the jury that if an entity does not have a legal existence separate from the person owning or operating it, the person and entity would be one and the same for legal purposes. The defendants' argument on appeal focuses largely on the district court's refusal to give the requested instruction during the damages trial. We review the district court's decisions on jury instructions for abuse of discretion. *Russell v. National R.R. Passenger Corp.*, 189 F.3d 590, 593 (7th Cir. 1999); *Spiller v. Brady*, 169 F.3d 1064, 1066 (7th Cir. 1999). We consider jury instructions in their entirety, and consider whether the jury was misled in any way and whether the jury had an understanding of the issues. *Russell*, 189 F.3d at 593.

The jury instructions given during the damages phase of the trial were not in any way improper or misleading. First, as the plaintiff points out, the instructions given accurately reflected well-established law on the measure of damages for fraudulent misrepresentation, tracking the language of the Restatement (Second) of Torts § 549(2). The defendants make no argument to the contrary. More-over, it is difficult to understand why, after JJ already

---

[1] (...continued)

are at issue, citing *Fuesting v. Zimmer, Inc.*, 448 F.3d 936 (7th Cir. 2006). But the defendants' arguments all fit squarely within the confines of *Unitherm* because the defendants have not raised any evidentiary errors in their briefs on appeal.

had been found liable, an instruction that he and Tanj should be considered a single entity for legal purposes would have been relevant, let alone necessary. This is especially true as CPRD was not seeking any damages from Tanj. The defendants never clearly articulate a reason, nor do they explain the practical and prejudicial result of failing to give their proffered jury instruction, even after the judge expressed his opinion that "it didn't seem to be an instruction that was meaningful as it relates to what the jury is supposed to determine." R. 123, Tr. at 2-6. Quite simply, the district court did not abuse its discretion when instructing the jury during the damages phase.

As for any argument that the court erred by not giving the Party-In-Interest jury instruction during the liability phase of the trial, the defendants failed to properly preserve such an objection. *See* Fed. R. Civ. P. 51(c). Rule 51 requires that objections to jury instructions be made in a timely fashion, on the record and with sufficient specificity to allow the presiding judge the opportunity to correct potential mistakes.[2] The defendants first requested the Party-In-Interest jury instruction during the liability phase of the trial, and the court denied that

---

[2] CPRD improperly cites to Wisconsin procedural rules in support of its argument. We apply state law to substantive issues in cases before us on diversity jurisdiction (*see, e.g., RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008)), but "[f]rom beginning to end, diversity litigation is conducted under federal rules of procedure." *Mayer v. Gary Partners & Co., Ltd.*, 29 F.3d 330, 334 (7th Cir. 1994).

request. The defendants then failed to make any argument in support of the instruction or lodge any objection to the district court's decision not to give the instruction. Under Rule 51(b), the court "must inform the parties of its proposed instructions . . . before instructing the jury and before final jury arguments." Fed. R. Civ. P. 51(b)(1). The court must also give the parties an opportunity to object on the record and out of the jury's hearing before the court instructs the jury. Fed. R. Civ. P. 51(b)(2). The court informed the parties which proposed instructions it had accepted and which it had rejected (including, specifically, the Party-In-Interest instruction) at a conference on the record and outside the presence of the jury midway through the first day of the trial. R. 122, Tr. at 1-126. After testimony for the liability phase concluded, and immediately before the commencement of closing arguments, the court gave the attorneys an opportunity to object to the jury instructions. R. 122, Tr. at 1-161. The court asked counsel for both the plaintiff and the defendants if they had any comments or concerns with the jury instructions and both replied "no." *Id*. Immediately after instructing the jury, the court called the lawyers to a sidebar outside the hearing of the jury and asked if they had any comments regarding the court's reading of the instructions. R. 122, Tr. at 1-194. Again, both lawyers stated that they had no comments or concerns.

The defendants argue that their request for the instruction followed by the court's denial was sufficient to preserve the issue for review. In particular the defendants contend that lodging an objection after the court

denied the requested instruction would have been a futile act. We have repeatedly rejected this very argument. *See Griffin v. Foley*, 542 F.3d 209, 221 (7th Cir. 2008) (rejecting the argument that the mere tendering of proposed instructions different from the instructions given is sufficient to preserve the objection); *Dawson v. New York Life Ins. Co.*, 135 F.3d 1158, 1165 (7th Cir. 1998) (to preserve an objection to a court's refusal to use a proposed jury instruction, the objecting party must do more than submit a proposed instruction to the court); *Gordon v. Degelmann*, 29 F.3d 295, 298 (7th Cir. 1994) (tendering one's own instruction does not satisfy Rule 51; Rule 51 requires the parties to draw the court's attention to problems so that they may be corrected before the jury begins deliberations). The defendants failed to draw the court's attention to any problems with the instructions during the liability phase; indeed, the defendants expressly claimed to have no concerns with the instructions when asked. The objection is therefore forfeited.

Rule 51(d)(2) does, however, allow a court to consider a plain error in the jury instructions that has not been preserved as required if the error affects substantial rights. *See, e.g.*, *Griffin*, 542 F.3d at 222 ("Nevertheless, as a last resort, Rule 51 now allows a court to remedy an error in the instructions that was not properly preserved if the error is plain and affects substantial rights"); *Mesman v. Crane Pro Servs.*, 512 F.3d 352, 357 (7th Cir. 2008) (a plain error in jury instructions in a civil case is now a basis for reversal under Rule 51(d)(2)). Here, where appellants cannot articulate how they were affected by

the refused jury instruction, let alone how their "substantial rights" were affected, there is no reason for this court to interfere. *See Ammons-Lewis v. Metropolitan Water Reclamation Dist. of Greater Chicago*, 488 F.3d 739, 751 (7th Cir. 2007) (in plain error review of jury instructions in civil cases, the party complaining on appeal must show not only that an error occurred that, in retrospect, is obvious, but also that the error affected the substantial rights of the appellant); *Higbee v. Sentry Ins. Co.*, 440 F.3d 408, 409 (7th Cir. 2006) (plain error review of jury instructions under Rule 51(d)(2) is limited and discretionary).

For the foregoing reasons, the judgment of the district court is AFFIRMED.