# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3331

_____

United States of America,              *
                                                 *

     Plaintiff - Appellee,        *
                                               *   Appeal from the United States

v.                          *   District Court for the
                                             *   Eastern District of Missouri.

Rodney L. Shrum,             *
                                               *

     Defendant - Appellant.    *

_____

Submitted: April 15, 2011
Filed: September 9, 2011

_____

Before LOKEN and MURPHY, Circuit Judges, and JARVEY,[*] District Judge.

_____

LOKEN, Circuit Judge.

A jury found Rodney L. Shrum guilty of willfully filing a false joint income tax return with his wife for calendar year 2007 in violation of 26 U.S.C. § 7206(1) and 18 U.S.C. § 2. The district court[1] sentenced him to twenty-four months in prison. Shrum appeals, arguing insufficient evidence of willful false reporting, admission of unfairly

_____

[*]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa, sitting by designation.

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

prejudicial evidence of gambling expenses, and a substantively unreasonable sentence. We affirm.

## I. Sufficiency of the Evidence

The Internal Revenue Code provides that any person who "[w]illfully makes and subscribes any return . . . which he does not believe to be true and correct as to every material matter," and declares in writing that the return is made under penalty of perjury, is guilty of a felony. 26 U.S.C. § 7206(1). Shrum argues that the Government failed to prove that he willfully submitted a materially false statement on his 2007 return, which he signed and which contained the requisite written declaration. "Willfulness requires proof of a voluntary, intentional violation of a known legal duty." United States v. Morse, 613 F.3d 787, 794 (8th Cir.) (citation omitted), cert. denied, 131 S. Ct. 834 (2010). In reviewing the sufficiency of the evidence on this issue, "[w]e view the evidence in the light most favorable to the verdict, giving the government the benefit of all reasonable inferences that may logically be drawn from the evidence." Id. (quotation omitted). We briefly summarize the evidence at trial consistent with this standard of review.

In April 2008, Shrum and his wife Teressa filed their joint return for the year 2007. Most of the reported income appeared on a Schedule C form for an office-supply business, Infiniti Business Solutions ("IBS"), with Shrum listed as the proprietor of IBS. Schedule C reported gross sales of $279,316 and cost of goods sold of $285,115, resulting in a net loss that reduced to zero the Shrums' income tax liability for that year. An Internal Revenue Service investigation uncovered the fact that IBS's income was derived from a fraudulent scheme by Teressa Shrum and a Department of Defense employee, Steven Brown, in which Brown ordered computers that IBS never delivered, paying for them in small installments to avoid detection. Teressa and Brown pleaded guilty to theft of public money in October 2008; each was sentenced to twenty-four months in prison. In January 2009, the Shrums filed an

amended 2007 joint return that adjusted IBS's cost of goods sold to zero, resulting in a tax liability of more than $100,000.

The government presented evidence that all the money Brown paid to IBS for the fraudulent computer sales in 2007 flowed directly into a Washington Mutual bank account solely owned by Shrum. That account had almost no other source of deposits. For a business reselling office equipment, an IRS witness testified, the cost of goods sold would be its inventory purchases. The Shrums reported "purchases" of $285,000 on line 36 of Schedule C. But the expenditures from Shrum's Washington Mutual bank account in 2007 were not for the purchase of computer inventory for resale to DoD and other customers. Rather, the IRS traced expenditures of $87,000 in cash advances, $43,000 in casino spending, $23,822 in department store purchases, and $10,357 in cash withdrawals from ATMs located in casinos. There was evidence that money from the account was spent at casinos during times that Shrum's player activity card was active, raising the inference that he was using IBS revenues to finance his gambling.

The Government argued that this evidence proved Shrum knowingly and willfully provided false, material information on his 2007 return -- the cost-of-goods-sold figure -- because (1) Shrum was half-owner of IBS and listed himself as its sole proprietor; (2) virtually all IBS income was derived from fraudulent sales to DoD, and all of that money flowed directly into a bank account owned and controlled by Shrum; and (3) Shrum did not spend the money deposited into this account to purchase computers or on any other cost-of-goods-sold expenditures. The jury agreed.

On appeal, Shrum argues, as he did to the jury, that the government failed to prove he knew or should have known that the cost of goods sold reported on his original 2007 return was inaccurate: There was no proof he had day-to-day knowledge of IBS activities; the business was solely controlled by his wife. An IRS witness admitted that some checks drawn on the Washington Mutual account were

signed by someone other than Shrum, showing that he did not have exclusive control of that account. And the tax preparer who helped prepare the 2007 return testified that, when he questioned the large cost-of-goods-sold figure, Teressa replied, "I have the receipts for that figure." Finally, Shrum contends, the fact that he filed an accurate amended return "points towards his innocence in filing the original return."

We conclude that the government's evidence was sufficient to permit a rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. The issue was not whether Shrum participated in the fraudulent IBS transactions, or had sole control of the Washington Mutual bank account, or personally received all the monies spent from that account. The issue was whether Shrum knew that the $285,000 cost of goods sold reported on Schedule C of the original 2007 return was materially inaccurate. The evidence was sufficient to prove that Shrum was personally involved in the expenditure of IBS revenues on non-business purchases and activities to such an extent that he must have known the reported cost-of-goods-sold figure was materially inaccurate. And following Teressa's conviction, Shrum filed the amended 2007 return *after* learning that an IRS special agent wished to contact him. This evidence was sufficient to convict Shrum of willfully providing a materially false statement on his 2007 tax return. Compare Blauner v. United States, 293 F.2d 723, 735-36 (8th Cir.), cert. denied, 368 U.S. 931 (1961).

## II. The Evidentiary Issue

Shrum argues the district court abused its discretion when it admitted into evidence records of his 2007 casino activities. See United States v. Boesen, 541 F.3d 838, 848 (8th Cir. 2008) (standard of review). Shrum raised this issue in a motion in limine prior to trial, arguing that "[h]is spending habits are wholly irrrelevant to the issue at bar" and evidence of frequent gambling "will likely cause jurors to form a negative opinion" of him. The Government responded that this evidence was relevant to the issues of willfulness and falsity because it would show that Shrum personally

spent a large portion of the money that flowed into the Washington Mutual bank account from DoD computer sales on activities such as gambling that could not be legitimately reported as cost of goods sold. The district court agreed and ruled that it would not prevent the government from proving that "the money's never used to buy any equipment but it's spent in other ways."

On appeal, more or less conceding that evidence of how he spent money in the Washington Mutual bank account was relevant, Shrum argues that gambling expenditures should have been excluded under Rule 403 of the Federal Rules of Evidence[2] because gambling tends to "inflame moral prejudice" and in this case "provide[d] no more proof than expenditures at a grocery store or at the mall" that he knew the tax return was materially false.

"Rule 403 is concerned only with *unfair* prejudice, that is, an undue tendency to suggest decision on an improper basis." United States v. Fletcher, 322 F.3d 508, 518 (8th Cir. 2003) (emphasis in original; quotation omitted). We do not find the requisite unfair prejudice here. Shrum relies on United States v. Swan, 250 F.3d 495, 501 (7th Cir. 2001), but in that case, the prosecution "gratuitously" introduced evidence of the defendant's gambling as prior bad acts under Federal Rule of Evidence 404(b). Here, by contrast, Shrum's casino activities were clear evidence that he personally spent a substantial portion of IBS's reported income on expenditures that were not reportable as IBS's costs of goods sold. "[I]n cases where evidence of gambling is probative of the commission of the crime, courts routinely admit such evidence, albeit while evincing some concern as to its prejudicial effect." United States v. Blanchard, 618 F.3d 562, 570 (6th Cir. 2010). As the Seventh Circuit said in United States v. Mobley, 193 F.3d 492, 496 (7th Cir. 1999), although jurors may take a "dim view" of gambling, "we do not understand how putting the money to

---

[2]Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."

questionable ends can prevent the prosecutor from making an otherwise proper demonstration of motive and effect."

## III. The Sentencing Issue

Shrum contends the district court abused its discretion and imposed a substantively unreasonable sentence because it gave "significant weight to an improper or irrelevant factor." United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). He argues the court improperly considered the twenty-four-month sentences imposed on Teressa Shrum and Steven Brown for their theft-of-public-money convictions, an offense for which Shrum was neither charged nor shown to be personally involved. We disagree.

The relevant statute expressly provides that a sentencing court "shall consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). At sentencing, the district court noted that Shrum did not dispute "the conclusion in the presentence report that Rodney Shrum is equally culpable with Teressa Shrum," and that Shrum "disproportionately benefit[t]ed financially" from the fraudulent scheme perpetrated by Teressa and Brown. On these facts, it was not improper to consider the sentences imposed on Teressa and Brown for their clearly related offenses in order to avoid potential sentence disparity. Indeed, it might have been procedural sentencing error *not* to consider that § 3553(a) factor. The district court did not abuse its substantial sentencing discretion in imposing a presumptively reasonable twenty-four-month sentence that was within the advisory guidelines range of twenty-one to twenty-seven months in prison.

The judgment of the district court is affirmed.

_____

-6-