In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2452

EMPIRE BUCKET, INC.,

*Plaintiff-Appellee,*

*v.*

CONTRACTORS CARGO COMPANY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 12-CV-233 — **William M. Conley**, *Chief Judge.*

ARGUED OCTOBER 31, 2013 — DECIDED JANUARY 15, 2014

Before BAUER, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* Contractors Cargo Company engaged Empire Bucket, Inc., to fabricate a steel railcar deck. After the deck fractured, Contractors Cargo refused to pay the full purchase price and Empire Bucket sued for breach of the contract. Contractors Cargo countersued for breaches of the contract, the implied warranty of merchantability, and the implied warranty of fitness for a particular purpose. Prior to trial, the district court granted Empire Bucket's motion *in*

*limine* to exclude any testimony concerning one of the tests performed on the deck after it failed. The jury returned a verdict for Empire Bucket. Contractors Cargo appeals. We affirm.

## I. Facts

Contractors Cargo Company, a transportation business engaged in heavy-haul operations throughout the United States, commissioned Empire Bucket, Inc., to fabricate a steel railcar deck to be used with Contractors Cargo's Schnabel railcar—a specialized railroad freight car for transporting heavy and oversized loads. Contractors Cargo hired a third party to design the deck. The designs specified that the deck be fabricated from T-1 high-strength steel and that the welding be performed pursuant to American Welding Society specifications. The deck was designed to attach to the Schnabel car and to transport up to an 800,000-pound load. Empire Bucket fabricated the deck, which passed inspection by an outside agency and all nondestructive tests, and delivered it. Contractors Cargo connected the deck to its Schnabel railcar and loaded it to approximately 820,000 pounds. The next morning, an employee observed that the deck had dropped about three inches overnight. Contractors Cargo attempted to raise the deck with a hydraulic jacking system, but the deck fractured during the attempt.

Contractors Cargo hired a metallurgical engineer, Josh Schwantes, to determine why the deck had fractured. Schwantes determined that the deck contained an inclusion—which in this case meant a portion of the weld was composed of material with properties different from the

properties of the material in the rest of the weld. The inclusion was approximately 1/10th of an inch in length at the location where the crack originated. Schwantes also performed various tests on the deck, including a "Charpy v-notch impact test." This test showed that the material around the inclusion had low fracture toughness, which meant that the weld material was more brittle than expected. The deck passed all other non-destructive and destructive tests for the purposes of satisfying American Welding Society specifications.[1]

Based on this testing, Contractors Cargo concluded that the deck failed because Empire Bucket did not properly fabricate it. Thus, Contractors Cargo refused to pay Empire Bucket the full purchase price. Empire Bucket sued in Wisconsin state court for breach of contract. Contractors Cargo removed the action to federal district court and filed various counterclaims, including claims for breaches of the contract, the implied warranty of merchantability, and the implied warranty of fitness for a particular purpose.

Prior to trial, Empire Bucket filed a number of motions *in limine*, including a motion to exclude any testimony regarding the Charpy impact test performed on the deck. American Welding Society standards provide that if a project is to be welded to Charpy toughness criteria, that criteria must be specified in the contract documents. Thus, Empire Bucket argued, the Charpy impact test was irrelevant because the parties' contract did not specify any Charpy toughness criteria.

---

[1] As the term suggests, destructive tests are carried out to the point that the test subject fails. The Charpy impact test is a destructive test.

The district court directed Contractors Cargo to proffer its proposed testimony regarding the Charpy impact test and its relevance to Contractors Cargo's claims.

Contractors Cargo explained that it did not intend to offer testimony regarding the Charpy impact test performed on the deck for the purpose of demonstrating that the parties' contract required the deck to pass such testing. (Indeed, Contractors Cargo stipulated that the contract did not require the deck to satisfy any Charpy toughness criteria.) Rather, Contractors Cargo stated that it intended to offer testimony concerning the Charpy impact testing to establish that the weld material at the location of the inclusion had low fracture toughness (that is, that it was unusually brittle). And the test indicating brittleness supported Contractors Cargo's experts' conclusion that the weld containing the inclusion was the cause and origin of the deck's failure, which in turn supported the implied warranty claims.

In ruling on Empire Bucket's motion *in limine*, the district court focused almost entirely upon Contractors Cargo's breach of contract claim. The district court remarked that there "may be a better case for admitting … testimony about the cause of the deck failure for the purposes of discussing a breach of implied warranty theory, as the actual performance of the deck might then be relevant to whether it was adequate for the general or specific purposes for which it was built." Nonetheless, the district court observed that "the liability question at issue in this case is not whether or why the deck failed, but whether the deck satisfied the terms of the contract." The district court concluded that the testimony regarding the Charpy impact test was irrelevant and granted Empire

Bucket's motion *in limine* to bar testimony regarding that test at the liability phase of the trial.

However, at trial the district court clarified that only specific references to the Charpy impact test were barred. General references to the weld material's "brittleness" or "toughness" were otherwise admissible. Consequently, Contractors Cargo's experts were permitted to testify regarding the low fracture toughness (that is, brittleness) of the material at the location of the inclusion in the weld. For instance, Duane Gilbert, an experienced welder who qualified as an expert in the areas of welding, fitting, and quality assurance and control, testified that a weld can become brittle if "the heat input is too high." He testified further that the deck failed at the inclusion because it had a "brittle fracture." Specifically, Gilbert explained, the crack in the deck originated at the inclusion because it was the weak point in the brittle weld material. Similarly, Schwantes, who qualified as an expert in metallurgical failure analysis and static, dynamic, and fatigue mechanical testing, testified that the deck suffered from a "brittle fracture," which he defined as "a fracture that occurs below the yield strength of the material."[2] He explained that his testimony was drawn from initial observations that were confirmed "[b]ased on the analysis we had performed, based on metallography and some of the other test results." Schwantes concluded that the inclusion was the "primary factor" in the deck's failure, and that the deck's fracture was similar to "a textbook case for a brittle fracture." Nonetheless,

---

[2]   Schwantes explained that "brittleness" is the opposite of "ductility" or the "measure of a material's, let's say, elastic or capacity to form."

the jury returned a verdict for Empire Bucket. Contractors Cargo appeals.

## II. Discussion

On appeal, Contractors Cargo argues that the district court erred in excluding as irrelevant specific references to the Charpy impact test performed on the deck. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. Fed. R. Evid. 401. Where a district court grants a motion *in limine* and excludes evidence under Rule 401, we review the district court's ruling under an abuse of discretion standard. *Thompson v. City of Chicago*, 472 F.3d 444, 453 (7th Cir. 2006).[3]

Contractors Cargo contends that the district court abused its discretion in excluding as irrelevant specific references to the Charpy impact test performed on the deck because the test was relevant to Contractors Cargo's claims for breaches of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. Under Wisconsin law,

---

[3] Contractors Cargo argues that the district court abused its discretion by merely considering Empire Bucket's motion *in limine* because the motion was filed nine days after the first submission deadline. This argument is without merit. A motion *in limine* is merely a "pretrial request that certain inadmissible evidence not be referred to or offered at trial." Black's Law Dictionary 1109 (9th ed. 2009). The district court retains the power to make evidentiary rulings throughout the trial. Indeed, a district court may even adjust its disposition of a motion *in limine* during the course of a trial. *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006). Furthermore, Contractors Cargo does not contend that it was unfairly disadvantaged by the slight tardiness of Empire Bucket's motion *in limine*.

"[u]nless excluded or modified …, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Wis. Stat. § 402.314. The goods, *inter alia*, must be "fit for the ordinary purposes for which such goods are used." *Id.* Wisconsin law also provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified … an implied warranty that the goods shall be fit for such purpose." Wis. Stat. § 402.315.

In opposing Empire Bucket's motion *in limine*, Contractors Cargo explained that it intended to offer testimony concerning the Charpy impact testing to establish that the weld material used at the location of the inclusion had low fracture toughness (that is, that it was unusually brittle). According to Contractors Cargo's experts, the finding that the weld material at the location of the inclusion was brittle supported their conclusion that the weld containing the inclusion was the cause and origin of the deck's failure. In turn, this conclusion supported the inference that Empire Bucket failed to fabricate the deck such that it was "fit for the ordinary purposes for which such" decks are used or fit for the "particular purpose for which" Contractors Cargo ordered the deck.[4] Consequently, Contractors Cargo

_____

[4] On appeal, Contractors Cargo does not explicitly articulate the "ordinary purpose" or known "particular purpose" that the deck allegedly failed to achieve. But we think the purpose fairly obvious—namely, that the deck

(continued...)

argues, the results of the Charpy impact test performed on the deck make it more probable that Empire Bucket breached the implied warranty of merchantability or the implied warranty of fitness for a particular purpose. However, we need not—and do not—decide whether the district court abused its discretion when it excluded specific references to the Charpy impact test because any error would be harmless.

An error is harmless if it does not affect the complaining party's substantial rights. Fed. R. Civ. P. 61; *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012). We would not find that Contractors Cargo's substantial rights were affected unless there was a significant chance that the exclusion of specific references to the Charpy impact test affected the outcome of the trial. *Whitehead*, 680 F.3d at 930.

There is no significant chance that the exclusion of specific references to the Charpy impact test affected the outcome of the trial. As discussed above, the Charpy impact test performed on the deck was relevant to Contractors Cargo's implied warranty claims only to the extent the results showed that the material in the location of the inclusion had low toughness (that is, that it was unusually brittle). But at trial, Contractors Cargo's experts testified repeatedly that the material in the location of the inclusion was brittle. Moreover, Schwantes testified that the experts knew the material near the inclusion was brittle based on observations from the initial inspection of the deck and the "analysis we had performed,

---

[4] (...continued)
would transport up to an 800,000-pound load without failing.

based on metallography and some of the other test results[.]"[5] Contractors Cargo's experts only were barred from specifically identifying the Charpy impact test. This is not the exclusion of scientific evidence but of a scientific label. *Cf. Falana v. Kent State Univ.*, 669 F.3d 1349, 1356 (Fed. Cir. 2012) (finding exclusion of exhibits to be harmless error where the relevant substance of the exhibits was otherwise admitted); *Cook v. Navistar Int'l Transp. Corp.*, 940 F.2d 207, 213 (7th Cir. 1991) (finding exclusion of industry publications to be harmless error where "the substance of" the publications was otherwise admitted).

Contractors Cargo points out that its experts were also barred from testifying about the precise fracture toughness values of the material at the location of the inclusion generated by the Charpy impact test. However, while the precise values of the material's toughness would be important for establishing that the deck failed to satisfy particular Charpy toughness criteria (a theory Contractors Cargo expressly disclaims), in this case the Charpy impact test performed on the deck is only relevant to Contractors Cargo's implied warranty claims to the extent the test shows that the material at the location of the inclusion was brittle. No dispute about the specific *degree* of brittleness was presented to the jury. Indeed, Contractors Cargo's proffer does not include any attempt to show that the

---

[5]    Schwantes' testimony, that the conclusions about the material's brittleness were based on metallographic analysis and other testing, belies Contractors Cargo's argument that its experts were deprived of the "badge of science" when testifying that the material around the inclusion was brittle. Moreover, Schwantes and Gilbert's extensive qualifications were described to the jury prior to the experts' respective testimony.

precise fracture toughness values of the material at the location meant that the deck would only be able to support a particular weight limit that fell below the weight limit the deck was designed to handle. Rather, Contractors Cargo's experts merely testified that the brittleness of the material at the location of the inclusion supported the conclusion that the weld containing the inclusion was the cause and origin of the deck's failure. Consequently, there is no significant chance that the minor evidentiary limitation imposed by the district court affected the outcome of the trial.

### III. Conclusion

In light of the testimony admitted at trial, the excluded evidence regarding the Charpy impact test would have added little to Contractors Cargo's case for its implied warranty claims. Because any error would be harmless, we AFFIRM the judgment of the district court.