NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 2, 2017*
Decided February 3, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 15-1799

| | |
|---|---|
| LORENA BACEROTT, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 12-cv-03433 |
| DANIEL SMETTERS, et al., | |
| *Defendants-Appellees*. | Manish S. Shah, |
| | *Judge*. |

**ORDER**

After police officers in Bolingbrook, Illinois, used a Taser on Lorena Bacerott and broke her arm during an arrest, she sued, claiming that two officers had used excessive force and intentionally inflicted emotional distress and a third had failed to intervene. A jury found for the defendants. On appeal Bacerott argues that the verdict was against the weight of the evidence and that the district court erred by not instructing the jury that

---

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

the Village of Bolingbrook would indemnify the defendants if they were found liable. Because Bacerott forfeited the first argument and the district court reasonably declined the requested instruction, we affirm.

The events that led to Bacerott's arrest began before dawn on May 4, 2011. The Bolingbrook Police Department had received two calls reporting that a woman was pounding on a neighbor's door. At the scene two officers found Bacerott sitting on a door stoop. After a brief conversation, one officer told Bacerott to leave the area, and she returned to her car. The officers then left. Soon after, however, the police department received another call, this time about a person honking a horn in the same area. Two officers returned to the scene and found Bacerott sitting in her car in a parking lot. One officer asked Bacerott to leave her car, but she refused. The officer then told her that she was under arrest for trespassing and repeated his request. She again refused. The officers tried to unlock her car using "slim jim" unlocking devices and other entry tools, but Bacerott thwarted them by manually keeping the door locked. Eventually the officers wedged open the driver's side window and sprayed pepper spray towards the steering wheel. But the pepper spray seemed to have no effect, and Bacerott remained in her car. One officer eventually broke the passenger-side window of the car and used his Taser on Bacerott three times while she was sitting in the car. Two officers then removed Bacerott from the car and restrained her, breaking her arm in the process.

Before the jury deliberated on Bacerott's excessive-force and state-law claims, the court held a jury-instruction conference. Bacerott asked the court to instruct the jury that the Village of Bolingbrook would indemnify the officers for compensatory damages should it find in her favor. She argued that the instruction was needed to correct a statement that the defendants' attorney made to the jury about damages. He had said during closing that one of the officers was "sitting here today four years later defending himself, defending his actions . . . and [Bacerott] wants money from him." Bacerott's counsel had objected to the argument, but the district court overruled the objection. It told the jurors that they would make their decision based on the evidence and the instructions. Responding to Bacerott's request for an instruction, the defendants countered that the attorney was pointing out only that Bacerott wants a judgment against the officers, not that they would actually have to pay their own damages or suffer financially. The district court denied the request for the instruction.

Trial and judgment followed. The jury found for the defendants, and the court entered judgment on the verdict. Bacerott made no motions, either before or after the jury's verdict under FED. R. CIV. P. 50 or after judgment under FED. R. CIV. P. 59(a).

On appeal, Bacerott argues that she deserves a new trial for two reasons. First, she contends that she posed no threat to the officers' safety and never fled, so the verdict in their favor was against the weight of the evidence. But Bacerott has forfeited this argument because she ignored the two methods of preserving it. She never moved for judgment as a matter of law at the close of evidence or after the jury verdict, as Rule 50 requires if she wanted to preserve for appeal a request for a new trial. "[T]his Court has determined that a party may only pursue on appeal a particular avenue of relief available under Rule 50(b), namely, the entry of judgment *or a new trial*, when that party has complied with the Rule's filing requirements by requesting that particular relief below." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 402 (2006) (emphasis in original); *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 823 (7th Cir. 2016). Likewise, Bacerott never moved for a new trial under Rule 59, so she also forfeited any request for relief through that rule. *See Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012).

Bacerott next argues that she should receive a new trial based on jury-instruction error. She contends that the district court erred when it denied her motion to instruct the jury that the Village would indemnify the officers if liable, but this argument fails as well. We review the district court's decision to deny a jury instruction deferentially. *Rapold v. Baxter Int'l Inc.*, 718 F.3d 602, 609 (7th Cir. 2013); *Consumer Prods. Research & Design, Inc. v. Jensen*, 572 F.3d 436, 438 (7th Cir. 2009). We look at the instructions as a whole and reverse only if the jury was misled about the law and a party was prejudiced. *Rapold*, 718 F.3d at 609; *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 638 (7th Cir. 1991). As Bacerott notes, a "defendant should not be allowed to plead poverty if his employer or an insurance company is going to pick up the tab." *Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996). But when the defendant does *not* plead poverty, courts should "exclude evidence of indemnification out of a fear that it will encourage a jury to inflate its damages award because it knows the government—not the individual defendants—is footing the bill." *Lawson v. Trowbridge*, 153 F.3d 368, 379–80 (7th Cir. 1998).

The proposed instruction was unwarranted. The defendants did not present evidence or argue about their financial situation. Although defense counsel at closing said that Bacerott "wants money" from the defendants, counsel did not argue that defendants could not afford it or would lack indemnification if liable. Because the jury was not misled about the effect of a judgment, the district court did not act unreasonably in declining the instruction.

We have considered Bacerott's other arguments and decided that none has merit.

AFFIRMED.